1834.

WILLIS
_v._
CORLIES.

---

### WILLIS and others v. CORLIES and others.

The court does not appoint a receiver over real estate before the hearing, unless there is evidence of fraud in obtaining possession or special circumstances to show a necessity to preserve the property *pendente lite.*

The society of friends hold real estate (Meeting-house, &c.) by trustees, never having been incorporated. A schism takes place in the congregation; two parties are formed; and as many trustees belong to one party as to another. One side withdraws, and, claiming to hold the original faith of the society, file a bill for a receiver and to restrain the parties in possession, &c. No charge is made of danger, fraud or irresponsibility. Motion for a receiver, upon the matter of the bill and affidavits in opposition, denied with costs.

---

Motion for a receiver of real estate, upon the matter of the bill before answer, but which was met by affidavits on the part of the defendants.

The subject matter of controversy in this cause was the real estate belonging to the society of friends in the city of New-York; consisting of two meetinghouses, a schoolhouse and other buildings and a cemetery or burying ground. The difficulty had grown out of the dissention which occurred in the society between the parties, usually denominated, by way of distinction, *"Orthodox"* and *"Hicksite."* It had led to a separation in several of their meetings within the Uni-

*January,*
*6. 7. 8.*
*1834.*

*Receiver.*

ted States; and in the month of May one thousand eight hundred and twenty eight a separation, from this cause, took place in the New York yearly meeting, and which was shortly afterwards followed by separation in the subordinate quarterly and monthly meetings.

The society of friends, unlike most other religious societies possessing property, had never been incorporated by law; and the property in question was not, therefore, held by a body corporate, but by individuals as trustees and in whose names the legal title was vested. The trusts upon which they held appeared to be substantially these, namely, to permit the meeting houses to be used for public or private worship under the direction of the monthly meeting, so called; allow persons appointed by the monthly meeting to enter upon the real estate; to alter or erect buildings, rent them, and receive the rents for the use of the monthly meeting, and if the monthly meeting should at any time nominate other trustees in the place of those holding the title, then to convey the property to such new trustees, and if any one or more of the trustees should be declared by the monthly meeting to be out of unity or church fellowship, he or they should be thenceforth disabled from serving and thereupon should release or convey all his or their legal estate in the property in such manner as the monthly meeting should direct or require.

It is to be remarked that the monthly meeting here spoken of is one of the subordinate judicatories of the society in its form of church government and, as such, entitled to the equitable and beneficial ownership of all the property or temporalities of the society situated within its bounds or jurisdiction. The monthly meetings in New York, having this ownership and control over the property, had been in the habit, from time to time, of appointing a property committee to take charge of its rights and interests in the real estate, manage the same and receive the rents and profits.

When the secession took place in the year one thousand eight hundred and twenty eight, there were six trustees and a property committee; and of the trustees, there were three of each party. The portion of the society called "Hicksites"—and which was by far the largest part—remained in possession of all the property; and had since had the exclu-

sive use and possession of the real estate aforesaid, except the cemetery, which had been used in common as occasion required and without impediment or interruption from either.

Ever since this controversy in one thousand eight hundred and twenty eight, each party had gone on separately in the observance of all the rules of the society of friends, in regard to discipline, the mode of worship, the manner of church government; at the regular stated periods, they had separately held yearly and subordinate quarterly, monthly and preparative meetings; and, inasmuch as there could be but one monthly meeting and so far as regarded the beneficial interest, both parties claimed to be the regularly constituted and only true monthly meeting and entitled to the use and enjoyment of the property.

The Hicksite party, being left in the actual possession of the property, had, since one thousand eight hundred and twenty eight, made some change of trustees as well as of the property committee; and the parties against whom the bill was filed were the persons who acted in these capacities under the authority and by the appointment of the Hicksite monthly meeting. The complainants were two of the persons who had been trustees at the time of the secession and who were of the "Orthodox" party and who also constituted the property committee since appointed by the monthly meeting of that party. They filed the bill on behalf of themselves and the other members of such monthly meeting. The object of it was to establish their right as such trustees; and they prayed that the court would decree them to be the monthly meeting of friends as it existed prior to the separation and that the regular members thereof for the time being in their social and collective meeting capacity, might be deemed and decreed to be the true and lawful *cestuis que trust* and for whose benefit the real estate before mentioned was held; also, that the defendants might be restrained from intermeddling in the concerns thereof until they should submit themselves to the settled order and discipline of the meeting and be restored to their rights as members; as well as for an account of the rents and profits against the defendants and that those of them who were trustees might be decreed to convey, &c.; and

WILLIS
*v.*
CORLIES.

1834.

for a receiver in the meantime to take charge of the estate and receive the rents and preserve the property until an adjustment and decision could be had.

Mr. *H. Ketchum* and Mr. *G. Wood* for the complainants.

Mr. *C. C. King,* Mr. *D. Lord* and Mr. *Storrs* for the defendants.

*January* 5th. 1835.

THE VICE CHANCELLOR:—This motion has given rise to an elaborate discussion of questions which the cause is calculated to present when it shall be brought to a hearing upon the merits ; but upon which I do not deem it necessary to express any opinion in this stage of the suit : for this motion can very properly be disposed of without going into a particular examination of the grounds of the bill or the statements made in opposition.

It is only necessary to observe at present that the complainants state and insist that the monthly meeting of which they are members and the quarterly meeting to which they are subordinate and the yearly meeting which they recognize and to which they adhere, are the legitimate meetings composing the true society of friends, and they charge that the defendants and those with whom they are in unity are seceders who have separated themselves from the society and departed, as they believe, from some of its ancient doctrines. And, with respect to the separation and its attending circumstances during the sitting of the yearly meeting in the month of May one thousand eight hundred and twenty eight, the explanation and statement of the defendants, by way of rebutting the allegations in the bill, go to show that the separation was premeditated and voluntary on the side of the complainants and contrary to the usages and order of the society ; and they deny that the yearly meeting withdrew or removed its sittings from the house in which it had commenced and on the contrary say that the "orthodox" party having seceded, the yearly meeting there convened regularly proceeded in its business, appointed its clerk and finally adjourned to meet again at the usual time and place the next year and that it had ever since continued, from year to year, to hold its sit-

tings at the stated time and place according to the establish-
ed usage and practice of the society; also that in like man-
ner after the withdrawal of the orthodox party from the sub-
ordinate quarterly and monthly meetings, those meetings had
been regularly held and continued; and the defendants, there-
fore, denied that the monthly meeting of New York had been
excluded from the meeting houses since the secession or that
the defendants, as trustees, disclaimed to hold the real estate
for the use of the monthly meeting or had denied the right of
such meeting to receive the rents and profits or possession
and enjoyment of the property. And they further said,
that the annual net income of rents had not exceeded three
hundred dollars, and which had been applied towards sup-
porting the schools maintained by the monthly meeting to
which they belong.

The religious belief and fundamental doctrines of the so-
ciety, as understood by the complainants, are set forth in the
bill; and the defendants, by way of answer to the charge of
entertaining false views and doctrines, as inculcated by Elias
Hicks, of whom they are alleged to have been the followers
and adherents, also give a summary of their belief and the
doctrines held by the members of the meetings to which they
belong—and, upon comparison, it will be found they do not
differ in any important particular. Although their creeds
may be somewhat differently expressed, yet they are substan-
tially and virtually the same. And, on this subject, whatev-
er dissentions may heretofore have been produced by a dif-
ference of opinion, there would really appear to be no room
at this day for dissertation or controversy.

I am bound to believe that the solemn declarations made
by the parties of their religious belief are made in all since-
rity and truth; and I had hoped, after this public and recip-
rocal avowal of their sentiments on a subject of such great
concern and in which they are found so nearly to agree as
scarcely to leave a shadow of difference perceptible that,
laying aside all party distinction and acting in a spirit of for-
giveness and charity towards each other, they would, after a
season, have come together in christian fellowship and form-
ed again a united society—or if that were a thing not to be

1834.

WILLIS
v.
CORLIES.

1834.

WILLIS
*v.*
CORLIES.

accomplished, that they would at least have adjusted their differences in respect to the property, without further litigation. Indulging in this hope, I have forborne a decision of the motion for an unusual length of time ;. and I could still wish—and if my recommendation can be of any avail, I would most earnestly recommend—an amicable settlement by compromise of this—I had almost said, unnatural controversy respecting property, upon such equitable and just principles as I am sure can be suggested by many sensible and good men to be found among both parties. It is, however, the business of the court to do more than offer its recommendation: when called upon, it must decide ; and I, therefore, proceed to dispose of the present motion.

It cannot but be perceived that the great question in reference to the property is: which is the true monthly meeting ?

For the present purpose, I assume there cannot be two monthly meetings within the same bounds or jurisdiction and both be entitled to the same property. The trusts upon which the estate is held, recognize but one and admit of no partition or apportionment of the property among several, unless by mutual consent. Where two such meetings are formed, one of them must be spurious. Here, however, there are two, each claiming to be the true monthly meeting and denying the legitimacy of the other. Both parties assert their claims and make these denials with equal confidence ; and the question of right between them remains to be determined. The cause is not yet in a situation to enable the court to ascertain and decide which set of trustees is to hold the title or which committee shall have the right to manage and control the use of the property.

The defendants, as trustees and as such committee, have the present possession and assume the exercise of rights in those capacities. Believing themselves to be the rightful trustees and managers, they take care to preserve the property as their own ; and there is neither proof nor allegation before me of the danger to it from acts of waste or destruction by the defendants or any apprehension of injury in consequence of the property being in their possession or under

their control pending the litigation. Nor is it alleged that the defendants are irresponsible men and unable to make good the loss of rents to the complainants, if they, the defendants, should be decreed to account for the rents which they may, in the meantime, receive. Under circumstances like these, it appears unnecessary to appoint a receiver, nor would such appointment be consistent with the principles by which this court is governed. Chancellor Kent has remarked that the exercise of the power of appointing a receiver must depend upon sound discretion and in a case in which it must appear to be fit and reasonable that some indifferent person should take charge of the property for the greater safety of all the parties concerned: *Verplanck* v. *Caines*, 1. J. C. R. 58. The court looks to the security and preservation of the property and ought not to interfere pending the litigation when the plaintiffs' right is not perfectly clear and the property itself or the income arising from it is not shown to be in danger. This was considered by Chancellor Sanford to be the true principle which should govern the court in the exercise of its discretion upon these motions: *Orphan Asylum* v. *M'Cartee*, 1. Hopk. Rep. 429.; and it is acknowledged to be the rule in several of the English cases that there must be some evil actually existing or some evidence of danger to the property or a strong special case of fraud in the defendant clearly proved to induce the court, in this stage of the cause, to take the property under its care: *Hugonin* v. *Basely*, 13. Ves. 105.; *Middleton* v. *Dodswell*, Ib. 266.; *Lloyd* v. *Passingham*, 16. Ib. 69. In another case, in the Irish chancery, it has been observed, that such an interference is, to a certain extent, giving relief—in fact, depriving defendants of a present use and enjoyment of the estate and, so far, a decision *pro tempore* against them; and, therefore, without some strong necessity, the court ought not to do any act to disturb the existing possession until, from a view of the whole case and by a regular adjudication, it can pass upon the right: *Houlditch* v. *Lord Donegall*, 1. Beatty's Rep. 402.

It has been urged in argument upon the present motion that this is a case in which a difficulty has occurred among trustees who were vested with the legal title and that a por-

1834.

WILLIS
*v.*
CORLIES.

1834.

WILLIS
v.
CORLIES.

tion of them are excluded by their co-trustees—and this is such an abuse as to require the immediate interference of the court in respect to the safety of the property; and that the defendants, who were trustees, should have applied to this court for directions or by bill of interpleader, instead of assuming to act for themselves in making conveyances of the property to others and which they could not lawfully do. Whether this be so or not depends altogether upon the main question, namely, which is the monthly meeting entitled to stand as *cestuis que trust* of the property? And if the one which the defendants represent is entitled, it had the power, according to the trust, of declaring such of the trustees as were not in unity with it incompetent to serve and of appointing others in their place; while a refusal on the part of such disqualified trustees to convey to others so appointed would, of itself, have been a breach of trust. Hence, to say there has been an improper exclusion and an abuse of the trust in this respect on the part of the defendants, acting under the authority of a monthly meeting, is to determine the question.

After all, it comes back to the only inquiry which I apprehend can be made in this stage of the cause : is there danger to the property—in other words, is there evidence of fraud in obtaining the possession or any special circumstances to render it necessary for the preservation of the property *pendente lite* or proper in the exercise of a sound discretion for the interference of the court in this summary manner ?

As there is scarcely a color or pretence for this application on any of the above grounds, I must refuse it with costs.