## ZEBULON KIRBY *vs.* JUSTUS INGERSOLL and NEHEMIAH INGERSOLL.

First Circuit. One partner may bind his co-partner in all matters within the scope of the co-partnership; the implied authority of one partner to bind his co-partner, is generally limited to such acts as are in their nature, essential to the general objects of the co-partnership.

Kirby
vs.
Ingersoll.

One partner cannot make a general assignment of the partnership effects, to a trustee for the benefit of the creditors of the firm, without the knowledge or consent of his co-partner, when he is on the spot, and might have been consulted.

There is no implied authority resulting from the nature of the contract of co-partnership, that will authorize one partner to make a general assignment of the partnership effects, without the knowledge or consent of his co-partner.

The authority impliedly vested by each partner in the other, is for the purpose of carrying on the concern, and not for the purpose of breaking it up and destroying it.

One partner does not, by any implication, confer a power upon his co-partner, of divesting him of all interest in, or authority over, the concern.

One partner may transfer a portion of the assets, for the purpose of paying or securing debts, or to raise means to carry on the concern; but the power of divesting entirely one partner of his interest, appointing a trustee for both, and breaking up the concern, is not one of the powers either contemplated or implied by the contract of co-partnership.

Where the covenants and conditions of bonds and other deeds are several, they may be good in part, and void as to the residue.

The better opinion seems to be, that even at common law, a deed fraudulent in part, is altogether void.

By the term *fraud*, the LEGAL intent and effect of the acts complained of, is meant.

The law has a standard for measuring the intent of parties, and declares an illegal act, prejudicial to the rights of others, a fraud upon such rights, although the party denies all intention of committing a fraud.

The principle upon which general assignments, by one partner, have been declared void is, that one partner has no authority to make a general assignment of the partnership effects in fraud of the rights of his co-partner to participate in the distribution of the partnership effects among the creditors.

A distinction seems to have been taken between instruments void by statute, and void at common law.

The construction to be put upon a deed conveying property illegally is, that the clause which so conveys it, is void equally, whether it be by statute or at common law. This is the rule, except in cases where the statute declares the whole instrument void.

The cases where instruments have been declared good in part, and bad as to the residue, seem to have been bonds which were variant from the statute, or deeds which purport to convey lands, some portion of which the party could not lawfully convey.

One good trust inserted in an illegal instrument of assignment, cannot make that instrument a valid one.

A grantee, who voluntarily becomes a party to a deed which is fraudulent in part, forfeits his right to claim benefit from another part, which would have been good.

October 6.    The bill in this case was filed September 5, 1839, and states that November 9, 1833, complainant and Justus Ingersoll, one

of the defendants, entered into a co-partnership in the trade and business of tanners, curriers, and dealers in leather; that they were to be equally interested, and devote their time and skill to the management of the business, under the firm and style of "Ingersoll & Kirby," and were to share the profits equally. That the co-partnership agreement was not reduced to writing; was to continue so long as they should be satisfied with each other.

That immediately on entering into the co-partnership, the firm of Ingersoll & Kirby purchased stock in trade to a large amount; that they purchased out the business of a firm then trading in the city of Detroit, under the name of "Justus Ingersoll & Co.," and undertook to pay the liabilities of said firm, to the amount of the stock received from said firm, one of which was a debt to complainant, of about $900. That at the time of forming the co-partnership, said Justus resided at Medina, in the state of New York, and continued to reside there until September, 1838, when he removed to Detroit; that during his residence in the state of New York, said Justus did not devote his time to the business of said firm, but was exclusively engaged in conducting and carrying on his own private business, for his own exclusive benefit. That complainant resided at Detroit, where the business of said firm was carried on, and devoted his whole time to the business of said firm; that the business of said firm became prosperous and lucrative, and was carried on without any material disagreement, until about the month of November, 1838, when some difference of opinion arose as to the mode of conducting the business, and the said Justus expressed a desire to close the said co-partnership business; that complainant expressed his willingness to dissolve the co-partnership, as soon as the business of the firm could be placed in a situation to secure to the creditors of the firm the immediate payment of their debts. That immediately, complainant directed the whole of his attention to the payment of the liabilities of the firm, and to the collection of the out-standing debts due to the firm; that the liabilities of the firm had been reduced, during ten months last past, about $11,000.

That complainant and said Justus had from time to time, as fast as they could without prejudicing the rights or interests of the creditors of the firm, since that time, divided between them certain of the property of the firm, so as to hold the same in severalty, and not as partners; that among the property so set apart to complainant, there were about 728 sides of upper leather, of about the value of $2,000. That there was assigned to said Justus as an offset for the property so assigned to complainant, about 540 hides, of about the same value as those assigned to complainant; that said Justus took possession of the property so assigned to him, and shipped the same to Medina, in the state of New York; that complainant took possession of the property so assigned to him, and packed the same away apart from the partnership property, but leaving the same in the same building where the co-partnership business was carried on, and in a building contiguous thereto. That at various other times there was other divisions of the property of said firm between complainant and said Justus, with the view and intent to close the said co-partnership business as fast as the same could be done without hazarding the interests of the creditors or materially injuring the business of the firm. That the property so set aside to complainant and said Justus, by amicable division, was not charged or entered against either, on the books of the firm. That August 28, 1839, while the business of the firm was so in progress of final settlement, the said Justus Ingersoll, without any previous consultation with complainant, and without complainant's knowledge or consent, made or pretended to make an instrument of assignment or indemnity to one Nehemiah Ingersoll, and in which assignment it was, among other things set forth, that complainant and said Justus were jointly indebted to James Abbott, of the city of Detroit, for rent, accruing on a ceartain lease, bearing date April 11, 1836, and that said Nehemiah was liable to pay the said rent by reason of a bond signed by him for the said firm. And that it was further set forth in said assignment, that said Nehemiah was liable upon a certain bond bearing date November 19, 1835, executed by him to the Farmers' and Mechanics'

bank of Michigan, for the benefit of said firm of Ingersoll & Kirby, in the penal sum of $20,000 00, conditioned to pay the sum of $10,000 00, or the amount of the indebtedness of the said firm to said bank, not to exceed that sum, and that the present indebtedness of the firm of Ingersoll & Kirby to the said bank, for which said Nehemiah was liable, was about $10,000 00. That said Nehemiah was also liable as endorser of a promissory note of said firm for the sum of $2,000, and that said firm were willing, not only to secure and indemnify the said Nehemiah, &c., on account of his liability on the bond, but also to pay him the $2,000 and to secure to all other creditors of said firm the payment of their just debts, out of the moneys and effects of said firm, after such indemnification and payment to said Nehemiah, and for the purpose of such indemnification, the said Justus, using the name of the said firm of Ingersoll & Kirby, assigned to said Nehemiah the stock in trade, or the greater proportion of it, amounting in value to about the sum of $9,000, and notes and accounts belonging to said firm to the amount of about $6,000, and in and by said deed of assignment, gave said Nehemiah full authority to sell and dispose of all the said property and collect all the said debts and apply the proceeds of the same to the payment:

1st. Of the $2,000 due to him as endorser of said note.

2d. To pay off and satisfy any debts due from said firm upon which the said Nehemiah was in any manner bound to pay; and

3d. To pay and satisfy any other debt or debts justly due or owing by said firm; to retain out of the moneys collected, a reasonable sum for his services, and to pay over to said Justus and complainant, the residue, &c.

The bill states that said Nehemiah is a brother of said Justus, and charges that said Justus was largely indebted, individually, to said Nehemiah, for money loaned of him, and that said assignment was made by said Justus not for the purpose of securing any debt owing by said firm of Ingersoll & Kirby to said Nehemiah, or for securing or indemnifying him against any debt or demand owing by the firm for which said Nehe-

miah is security; that said firm was in good credit at the time of making the assignment, and was then able to pay all its liabilities and obligations; that said Nehemiah had been the endorser of said firm during the whole time of its continuance, and that there was not at the time of filing the bill any paper on which said Nehemiah was liable, except that which is held as collateral to the debts of said firm; that said Nehemiah never became liable to pay any sum for the firm, by reason of the protest for non-payment of the liabilities of said firm; that said firm are not indebted to the Farmers' and Mechanics' bank in the sum of $10,000, but that their whole indebtedness to said bank is $6,700, no part of which was yet due; that since said assignment, complainant has been prevented from attending to the business of said firm, and when complainant applied to examine the books and papers of the firm, he was abruptly refused and told by said Justus that the papers, books, notes and accounts of the firm were left in his, the said Justus' charge and care by said Nehemiah, and that complainant could have no access to them.

The bill further states that there is a large amount of property, consisting of leather, hides and other stock, belonging to said firm, which is not mentioned in the said assignment, which is now in the possession of said Nehemiah and said Justus, which complainant fears will be wholly lost to said firm unless some person, duly authorized, should take possession of the same; that there is also a large amount of notes and accounts due to the firm, which are not assigned, but are in the possession of said Nehemiah and said Justus, and said Nehemiah has demanded payment of the same; that said Justus in said assignment, has recognized a claim in favor of said Nehemiah, to the amount of $2,000; that instead of the same being a true and just account, said Nehemiah justly owes the said firm of Ingersell & Kirby, the sum of $1,200; that immediately after the said assignment, said Justus caused a notice of the dissolution of the co-partnership to be published; that some of the stock on hand, consists of hides, now in the progress of tanning, which requires the constant attention of a

large number of hands to fit them for market, &c.; and that there is danger of the property of said firm being squandered and the creditors defrauded, &c.; charges said Nehemiah to be irresponsible, &c., and that he is disposing of the property, &c.

The bill prays for an account; for an injunction, and the appointment of a receiver. Injunction granted.

The answer admits the co-partnership, the purchase of the stock, &c., of the firm of J. Ingersoll & Co., to the amount of $15,000; admits the indebtedness of the firm of J. Ingersoll & Co., to the complainant in about the sum of $900, and that that amount was credited to complainant as so much capital paid in at the time of entering into the co-partnership; states that complainant had been employed as clerk and agent for the firm of J. Ingersoll & Co., and in consequence of inaccuracies in the statement of the affairs and inventory of the property of the firm of J. Ingersoll & Co., made by complainant, said Justus, (in order to compromise the matter and enable the firm of Ingersoll & Kirby to proceed with the business,) was obliged to pay Rufus Ingersoll and John Bagley, (two of the members of the firm of J. Ingersoll & Co.,) in the years 1833–4, the sum of about $3,600 out of his individual funds. Admits that complainant conducted the business of the firm at Detroit; states that complainant made all the sales, received all payments, and that it appeared from the books of the firm up to May 14, 1835, that payments had been made to Rufus Ingersoll and John Bagley, to the amount of about $7,790; admits that said Justus resided at Medina, in the state of New York, up to 1838, as stated in the bill, at which place he was engaged in attending to his own business; but states that by the partnership agreement, said Justus was relieved from devoting any part of his time to the business of the firm; states that the firm of Ingersoll & Kirby purchased large quantities of hides at Detroit, and sent them to said Justus to be tanned at his establishment at Medina; that the costs and charges of said Justus, which he had charged against the said firm, for tanning said hides, amounted to about the sum of $10,000;

states that during the continuance of the said partnership, said Justus had sent from his establishment at Medina, to the store of the firm at Detroit, large quantities of leather, oil, and other materials, to be sold at and used in and about the business of the firm of Ingersoll & Kirby, at Detroit, to the amount or value of about $8,000. The answer further states and charges, that the purchases made by complainant on account of said firm, amounts to about the sum of $122,000; states that no cash book was kept by complainant, and that complainant was extremely negligent in keeping the books of the firm; that complainant had appropriated a large amount of funds of the firm to his own use, without giving any account therefor; that he had committed gross frauds upon the rights of said Justus, in managing the affairs of said firm; that sometime in the month of August, 1839, said Justus declared to complainant, in positive terms, that he should make an assignment of the partnership effects, for the purpose of paying and securing the debts of the firm, and that he should proceed immediately to dissolve the partnership, to which complainant did not object; that August 27, 1839, said Justus, in the name of the firm of Ingersoll & Kirby, made, executed and delivered the assignment referred to in the bill, to said Nehemiah Ingersoll, who is brother to said Justus, that complainant had frequently, before making said assignment, expressed his willingness that said Justus should sell and tranfer all his interest to said Nehemiah, and that he would be fully satisfied with any arrangement which said Nehemiah should recommend for the final settlement and adjustment of all the affairs of said firm; admits there was some conversation about making a division of a part of the property of the firm, but denies that any such division ever was made as is set up in the bill; that it was agreed by complainant and said Justus, that said Justus should tan all the raw hides which should be sent to him at his establishment at Medina, for wh'ch said Justus was to be allowed a reasonable compensation by the firm of Ingersoll & Kirby; that it was known and approved of by said complainant, that said Nehemiah was, from time to time, during several

years, advancing money to said Justus, for the benefit and on the credit of the firm of Ingersoll & Kirby, which was used by said Justus in the business of said firm, and for the payment of which, the faith of said firm was pledged; avers that the balance due from the firm to said Nehemiah, at the date of the assignment, was at least $1,600, which said firm was legally and equitably bound to pay; denies that said Nehemiah is a debtor to the said firm; states that said Nehemiah has endorsed for said firm, since its commencement, to the amount of $60,000; that he was, at the time of the assignment, directly liable to the said Farmers and Mechanics' bank, for said firm, to the amount of $6,700; that he is further liable for the payment of rent to James Abbott, for said Justus and complainant; avers that the assignment was made for the purposes therein expressed, and no other, and that it was made after full notice by said Justus, to said complainant, of his intention to make an assignment of the partnership property; denies that all the property of the firm is not mentioned in the assignment; denies that the firm was in good credit at the time of making the assignment. The answer further states and charges, that complainant has, since the commencement of said partnership, received as net profits arising from the business of said firm, the sum of $73,000; that the whole amount received by said Justus, from said firm, individually, does not exceed the sum of $20,000; denies that said Nehemiah is insolvent; also denies all fraud in making the assignment.

The complainant now moves for the appointment of a receiver, and the defendants move for a dissolution of the injunction.

WALKER, PORTER and GOODWIN, for complainant.

1st. As to the power of one partner to assign partnership property. (*See Gow on partnership*, 74, *and note; Collyer on partnership*, 217 *and note;* 1, *Dessaus. Rep.*, 537; 4, *McCord Rep.*, 519; 5, *Cranch*, 300; 4, *Day's Rep.*, 428; 4, *Wash., Cir., C. Rep.*, 232; 3, *Paige. C. Rep.*, 523; 5, *Paige, Rep.*, 30.)

First Circuit.

Kirby
*vs.*
Ingersoll.

2d. The answer shows that the debt due Abbott on the lease was not a partnership debt, the lease being to Justus Ingersoll and Zebulon Kirby, and therefore, partnership property could not be assigned to pay it.

3d. The answer discloses the fact of a violation of the injunction by the defendants; by the rule laid down in *Daly vs. Daly, M. S. S.,* by this court a motion to dissolve an injunction will not be entertained until the party violating the injunction shall have paid into court a sum of money equal in amount to the property disposed of.

4th. This violation of the injunction and the disposal of the partnership property would, when taken with the other circumstances, seem to demand a receiver to protect the rights of the creditors of the firm.

HOWARD and FRASER, for defendants.

J. M. HOWARD.

It is admitted by the pleadings, that complainant and J. Ingersoll were, at the time of the assignment, partners in trade, and that the assignment was made by J. Ingersoll in the name of the firm.

The first question, therefore, which arises, is as to the power of Justus Ingersoll to make the assignment, irrespective of the fraud charged in the bill, which is fully denied by the answer.

The very relation of partners implies a confidence in each other; such a confidence as makes each partner the general agent of the others, and renders his contracts in their name and in reference to the partnership effects, the contracts of all the others. In all simple contracts they are regarded as one contracting party; and they are all bound, provided the contract has reference to the co-partnership; *Gow on part.,* 53, 54, 55; and such has been the law since the time of *James the I.; Ib.,* 73 *to* 75.

And Lord Mansfield declared that each partner has the power, singly, to dispose of the whole of the partnership effects;

and this results from the principle that partners are *joint tenants;* one joint tenant may lawfully dispose of the whole, which is not the case with tenants in common. *Fox* vs. *Hamburg,* 3, *Cowp.,* 445; *Burton* vs. *Williams,* 7, *Eng. Com. L. Rep,* 149; *Lam.* vs. *Dwant,* 12, *Mass.* 54. (*See* 10 *Peters,* 260.)

With regard to all effects contributed, manufactured or purchased to be sold for the benefit of the partners, each partner in the course of trade has an absolute right to dispose of the whole, and may assign it by way of pledge or security. *Watson on part.,* 67; *Purson* vs. *Hooker,* 3, *John R.,* 70, 71; *Mills* vs. *Barber,* 4 *Day, R.,* 425; *Harrison* vs. *Sterry,* 5, *Cranch,* 289; and the sale of one partner is the sale of both; and such is the unity of right and interest, that one partner may enter the appearance of the other in an action against all. *Gow. on Part.,* 79, 195, *and appendix, page* 494; 7, *T. R.,* 108.

The case of *Dickinson* vs. *Legare,* 1, *Dessaus.,* 537, is the first case in England or the United States, in which the principle has been denied; but it should be remembered that it was the case of one partner making an assignment while a prisoner of war in the enemy's country and to an alien enemy, and has not been sanctioned by any other decision, but overruled in *Robinson* vs. *Crowder,* 4, *McCord,* 518, *and in Egberts* vs. *Woods,* 3, *Paige,* 523.

The only point decided in *Havens* vs. *Hussey,* 5, *Paige,* 30, is "that one partner cannot, without the consent and against the known wishes of his co-partner, execute an assignment of all the partnership effects to a mere trustee for the benefit of the favorite creditors of the assignor." The case at bar, differs greatly from that. Here the assignment is made directly to a creditor of the firm. The answer shows that the firm owe him about $1,600 00, and denies that the assignment was made against the known wishes of the complainant, and shows that he had every reason to suppose, indeed that he was directly notified, that it would be made, and that he did not dissent. Here the assignee is authorized to retain the amount of

First Circuit. his debt; and being responsible as indorser for the firm to the
Kirby    amount of the $2,000 00 note, and bound by his obligation
*vs.*
Ingersoll. to the Farmers' and Mechanics' bank to the amount of $7,000
00 for *their* benefit, and also to James Abbott for the pay-
ment of the rent of the premises leased by him to Ingersoll
& Kirby, he is authorized, in order to secure and indemnify
himself, to sell the property assigned, to pay the debts for
which he is liable, and to indemnify himself out of the pro-
ceeds; after which payment and indemnification, he is requir-
ed to account to the partners for the residue of the fund.

The authorities make no distinction between the power to
sell and the power to indemnify by pledging the property; and
they all agree that it is the right of one to appropriate the
joint property for the payment or security of the debts of the
firm, in such manner and by giving such preferences as he may
think proper; and that preferences may be created, even if
the firm is insolvent.   3 *Paige*, 525, 526; *Wakeman* vs. *Gro-
ver*, 4 *Paige*, 36; 1 *Dallas*, 248; 7 *Mass.*, 257.

So far as N. Ingersoll has an interest in the assignment, he
holds the property as a personal security, with full authority
to sell, and out of the proceeds to cancel his liabilities for the
firm, having first retained the amount due himself, and the re-
sidue of the fund is to be applied in payment of any debts
which the firm may owe, *without preference of one creditor to
another.*   There is no *inequality*, no authority to compound with
the creditors, and no *terms* whatever requiring them to dis-
charge their debts for less than the amount legally due; were
there such terms the assignment would be void.   2 *Binney's
R.*, 174; 4 *Dallas' R.*, 76; 4 *Paige*, 38–9.

The decision in *Havens* vs. *Hussey* conflicts with that in *Har-
rison* vs. *Sterry ;* and without any precedent to justify it, Chan-
cellor Walworth declares an assignment by one partner to a
*trustee*, void in law and equity, for the reason that it is no part
of the partnership business " to appoint a *trustee* of *all* the
partnership effects for the purpose of selling and distributing
the proceeds among the creditors, in *unequal proportions.*" But
as if not satisfied with this decision, the same learned judge

brings this question again into doubt in the case of *Mills* vs. *Argal*, 6 *Paige* 582, in which he says, "there may be *some doubt* as to the right of the general partner, (it was a special partnership under the New York statute,) to make an assignment of all the partnership effects to a trustee, for any purpose, without the express or implied assent of the special partner." The case was, however, decided on other grounds.

But the law presumes the assent of the creditors to the trustee, until they express their dissent, and their rights cannot, therefore, be disturbed. *DeForest* vs. *Bacon*, 2 *Conn. R.*, 633.

The question then arises, can the *security* which was placed in the hands of N. Ingersoll, by the assignment, be wrested from him ? or, in other words, does the clause constituting him a *trustee*, (an event which, by the way, may never happen,) for the remaining creditors, vitiate and annul the whole contract of assignment ?

That security was so given, in pursuance of the authority possessed and exercised by Justus Ingersoll as a partner. (*See* 5 *Paige*, 31.)

A. D. FRASER.

It is competent for one of several partners to make an assignment of the co-partnership property. *Fox* vs. *Hanbury*, *Cowper*, 445; *Barton* vs. *Williams*, 5 *Barn. & Ald.*, 395; *Pierson* vs. *Hooker*, 3 *Johns. R.*, 70; *Lyles* vs. *Styles*, 2 *Wash. C. C.* 224; *Lamb* vs. *Durant*, 12 *Mass.*, 54; *Pierpont* vs. *Graham*, 4 *Wash. C. C.*, 232; *Mills* vs. *Barbor*, 4 *Day's Rep.*, 428; *Harrison* vs. *Sterry*, 5 *Cranch*, 289; *Robinson* vs. *Crowder*, 4 *McCord's L. R.*, 519; *Egberts* vs. *Wood*, 3 *Paige*, 517; *Gow on part.*, 51, 53, 54, 73, 74, 75, 79; *Appendix Taylor's case, Coll. on part.*, 216, 217; *Watson on part.*, 67.

That a deed may be good in part, and void for the residue, is the common law doctrine. *United States* vs. *Bradley*, 10 *Peters*, 243, 360; *Pigot's case*, 6 *Coke Rep.*, part 11, 27.

THE CHANCELLOR. This case presents the broad question

of the right of one partner to make an assignment of all the partnership effects, without the consent or concurrence of his co-partner, who is on the spot, and acting in the business of the co-partnership. Perhaps no question has been presented to this court, of greater practical importance, than the present; and it has been considered with a full and deep conviction of the responsibility imposed upon the court in its decision.

The authority of one partner to make such an assignment, if sustained in the present case, must be sustained in its broadest form. The two partners were both, at the time of the assignment, in town, and attending to the business of the firm. The complainant, on proceeding to the usual place of business, finds the brother of the other partner in possession, and is informed that an assignment of all the partnership effects has been made, and is denied all access to the books, and all interference with the property or business of the firm.

The allegation in the answer, that the subject of an assignment had been mentioned to the complainant, to which he made no objection, cannot aid the assignment. It is not pretended that, at the time of actually making the assignment, he was advised of it, or was in any manner consulted as to either the assignee, the terms and conditions of the assignment, or any thing else; but that the first notice to him was the information, that he no longer had any thing to do with the partnership property or business.

Very different views seem to have been entertained upon this subject, and it has become necessary to examine it with care and attention.

It will be found that the *dicta* relied on to sustain the powers of one partner to make such an assignment, have been thrown out under special circumstances, and that the reports, upon a careful examination, do not sustain the exercise of the power in cases like the present. The elementary writers, *Gow* and *Collyer*, state the rule to be, that one partner may bind the others in all matters within the scope of the co-partnership, and the implied authority of one partner to bind another, is generally limited to such acts as are, in their nature, essential

to the general objects of the co-partnership. Does this rule contemplate the authority here contended for?

Is it intended, that when both partners are on the spot, and where no difficulty exists in consulting each other as to the assignee, and the terms and conditions of the assignment, that, by the law of partnership, they are placed in such a position that one partner, on repairing to the place of business, may find all he possesses, together with the books and accounts of the firm, transferred to a third person, placed entirely beyond his reach, himself utterly excluded, and the business of the firm ended without his knowledge or assent? This cannot be contemplated.

Do the authorities cited, sustain the position? The case which has gone as far as any other, and much relied on in the argument, is the case of *Harrison* vs. *Sterry*, 5 *Cranch*, 289. In that case the question did not turn upon this point. But a question *was* raised upon the validity of an assignment made by one partner.

The court say in delivering the opinion: "The whole commercial business of the company in the United States was necessarily committed to Robert Bird, the *only* partner residing in the country. He had the command of their funds in America, and could collect or transfer the debts due to them." And it is manifest from the case, that the assignment was made of a portion only of the assets, to obtain aid in carrying on the concern. This case, from the entire showing, manifests clearly, that this is an exception rather than the rule, and that it was made under special circumstances; and such will be found to be the case in 2 *Cowper*, 445, also much relied upon. Indeed, I have been unable to find any case, where the broad power here asserted, has been sustained. Chancellor Walworth, it is said, has countenanced this principle in the case of *Egbert* vs. *Woods*, 3 *Paige*, 517; and it is unjustly, I think, said, that he virtually decreed both ways, and that there is a discrepancy between the above case and that of *Havens* vs. *Hussey*, 5 *Paige*, 31.

In the first case he says: "I do not intend to express an

opinion in favor of the validity of such an assignment of the partnership effects to a trustee, by one partner, against the known wishes of his co-partner, and in fraud of his right, to participate in the distribution of the partnership funds among the creditors, or in the decision of the question which of those creditors should have a preference in payment, out of the effects of an insolvent concern." Showing clearly, that after an examination of the whole subject, that he did not believe in the validity of such an assignment." In the case of *Havens* vs. *Hussey*, he says: "Upon the most deliberate examination, he was satisfied that the decision of the Vice Chancellor was correct, that such an assignment is both illegal and inequitable, and cannot be sustained." And further he says: "It is no part of the ordinary business of a co-partnership to appoint a trustee of all the partnership effects, for the purpose of selling and distributing the proceeds among the creditors, in unequal proportions. And no such authority can be implied. On the contrary, such an exercise of power, by one of the firm without the consent of the other, is, in most cases, a virtual dissolution of the co-partnership, as it renders it impossible for the firm to continue its business.

From a review of all the cases, it is clear that this power, if sustained at all, must be sustained upon the implied authority for that purpose from his co-partner, resulting from the nature of the contract of co-partnership. There is no such implied power. The authority impliedly vested by each partner in the other, is for the purpose of carrying on the concern, and not for the purpose of breaking it up and destroying it. One partner does not, by any implication, confer a power upon his co-partner, of divesting him of all interest in, or authority over, the concern. The elementary writers upon the subject, do not sustain this position. The adjudged cases, when carefully examined, do not sustain it; and, assuredly, it is not sustained by the reason of the thing, or the dictates of justice. Every consideration of public policy or commercial convenience, is against it. The result to which I have arrived is, that a part-

..er may transfer a portion of the assets or obligations, for the purpose of paying or securing debts, or to raise means to carry on the concern; but that the power here asserted, of divesting entirely one partner of his interest, appointing a trustee for both, and breaking up the concern, is not one of the powers either contemplated or implied by the contract co-partnership; and it is best that it should be so. Else, who could, with safety, enter into such a connection. On the other hand, if partners cannot agree, and one partner is violating his duty or endangering the rights of the other, the remedy is plain and adequate.

This assignment is partly for the purpose of securing the debts and liabilities of the firm to the assignee, as well as for the purpose of making him a general trustee for the firm. It was urged at the hearing, that if the assignment was void in other respects, it must be carried into effect thus far. I am inclined to the opinion, that effect may be given to the assignment to that extent, but it is not now necessary to decide this question.

From the views I have taken of this case, it must result in the appointment of a receiver, and the application of the assets must be under the direction of the court.

There are other considerations which render the appointment of a receiver appropriate in this case. It is contemplated by the assignment, to secure the assignee from his liability for the payment of money due upon a lease having some twenty-five years to run, and clearly not within the scope of the partnership.

The amount of the indebtedness of the firm to the assignee, is a disputed one. It will follow then, that a receiver must be appointed, and the assignee directed to deliver over to such receiver the partnership property and effects, and account with the receiver for whatever shall have come to his hands by virtue of such assignment.

———

The counsel for the defendants requested to be further heard upon the question of the appointment of a receiver; which request was granted.

A. D. FRASER, for defendants.

The court having decided that the assignments ought to be set aside, by the bill in this case, is valid as respects the interest of the defendant, Nehemiah Ingersoll, but inoperative as to all others. The complainant now insists that the property embraced in the assignment, must go into the hands of a receiver. This position is denied by the assignee, who insists that it necessarily follows from the decision which has already been made, that the trust shall remain with him, on whom the assignment conferred it. He submits that he cannot be deprived of it, unless the case falls within some of the exceptions to be found in adjudged cases upon this subject. The assignee contends that the only legal operation and effect of the decision which has been made, must be to render inoperative that part of the assignment which purports to create a trust for the benefit of those mentioned in the assignment, other than the assignee. If the assignment is good for any beneficial purpose, the assignee cannot be divested of the power and rights conferred on him by it, unless the fund be in danger, or some other strong ground urged which would justify the appointment of a receiver; and while he acts as assignee, he is as much under the control and direction of this court, as a receiver would be, and bound to execute the trust, modified, limited and qualified, as the court have already decided it must be.

Under these circumstances, it is contented that a receiver will not be appointed unless the property is shown to be in danger; that the trustee is irresponsible, or where the plaintiff's right is not shown to be clear; must show some evil actually existing or danger to the property, or a strong special case of fraud. *Edw. on Receivers,* 2 *Ch.*; *Willis* vs. *Corlis,* 2 *Edw.,* 286, 287, 288; *Orphan Asylum* vs. *McCartee,* 1 *Hopk.,* 429; *Verplanck* vs. *Caines,* 1 *J. C. R.,* 58; *Hugonin* vs. *Baseley,* 13 *Ves.,* 105; *Middleton* vs. *Dodswell, Id.,* 266; *Lloyd* vs. *Passingham,* 16 *Ves.,* 59.

The assignee is subject to the control and direction of this

court, as much as a receiver would be. *Shaftsberry* vs. *Arrowsmith*, 7 *Ves.*, 486, 487; *Beaufort* vs. *Berty*, 1 *P. Wms.* 702.

H. N. WAKLER, in reply.

The complainant insists in this cause, that the deed of assignment is void, *ab initio*, for the following reasons.

1. That one partner cannot assign the partnership goods without the assent of his co-partner. This position having, as a general rule, already been settled by this court, it is unnecessary to say any thing upon it. The case of *Havens* vs. *Hussey*, 5 *Paige. Ch. R.*, 30, lays down the true doctrine.

2. But this case is sought to be taken out of the rule on the ground that the deed of assignment constituted Nehemiah Ingersoll, the brother, a trustee as respects all the creditors of the firm of Ingersoll & Kirby, but himself, and that he acquired an individual right to the goods assigned, they having been assigned to him to secure the amount due him from the firm, and his liability for them as an endorser.

The decision that one partner cannot assign the partnership effects, seems to settle this question. The doctrine contended for by the counsel opposed, is that the deed may be good in part and bad in part. This doctrine does not apply in this case. It is only applicable where there are different clauses or covenants in a deed which do not depend on each other. But where the deed is entire, and the several clauses depend upon each other, then the distinction ceases, and it must either be good for the whole or bad for the whole. 1 *Shep. Touchstone*, 70, 71.

It is a necessary requisite that the person making the deed, be able to contract. This is not the case here. *Havens* vs. *Hussey*, 5 *Paige Ch. R.*, 30; 1 *Shep. Touchstone*, 54.

It is a well established rule in courts of equity, that interests of third persons gained by the fraud, imposition, or even undue influence over others, cannot be held by them. The interest of the assignee here, if he has any, has been gained by the fraud of Justus Ingersoll. *Hugonin* vs. *Baseley*, 14 *Ves.*, 273, 289; *Bridgeman* vs. *Green*, *Wilmot*, 64; *Hildreth* vs.

First Circuit.
Kirby
*vs.*
Ingersoll.

*Sands,* 2 *John., Chan. Report,* 35, 42; *Shepherd's Touchstone,* 66, 67.

In cases of alledged fraud, the answer of the party is not to be relied upon as to any advances, but positive proof is required. 3 *P. Wms. R.,* 228; 2 *Ves.,* 516.

In the case of *Sands et. al.* vs. *Codwise et. al.,* 4 *John: R.,* 536, the court said that no right can be deduced from an act founded in actual fraud. The cases in which a deed is set aside on terms, is not at all analagous to this. *Page* 599.

THE CHANCELLOR. Upon a former occasion, it was held that the assignment in question could not be sustained, so far as it purported to be a general one, to a trustee, for the payment of his own debt, in the first instance, and also as a general trustee for all the creditors. It was then said that it would follow, that a receiver must be appointed.

The reasons that induced the court to come to that conclusion, were then stated. A further reason is urged, that it appeared by the answer, that a considerable portion of the property of the concern had been sold before filing the answer, notwithstanding the injunction.

On that occasion the court remarked, that it was not contemplated to decide the question whether the assignment could be sustained, so far as it purported to constitute a security to the assignee, he being a creditor; but it was said that the court was inclined to the opinion, that it could be so far sustained, on the authority of the case in 10 *Peters,* 363. The counsel for defendants requested to be further heard, on the question of the appointment of a receiver, and it has also been urged, that a decision upon the validity of the assignment, should be now entered; so that, if the defendants desire to enter an appeal, it may be done, and a decision had in the appellate court. This is certainly proper and desirable. In a question of this importance, both in regard to principle and amount, every proper facility for an appeal should be afforded. This has compelled the court to examine this question, which, as it was not contemplated then, to dispose of it as it had not before done. In the case of *United States* vs. *Bradley,* 10 *Peters,* 363, which

was a case arising on a paymaster's bond, it was held, that First Circuit. when the covenants and conditions are severable, that bonds ~Kirby~ and other deeds may be good in part, and void as to the resi- *vs,* due. In *Hyslop* vs. *Clarke,* 14 *Johns. Rep.* 464, Van Ness, in Ingersoll. giving the opinion of the court, says: "The better opinion seems to be, that even at common law, a deed fraudulent in part, is altogether void." This view seems to have been sustained and carried out in the subsequent decisions in New York.

By the term fraud, it should be remembered that the legal intent and effect of the acts complained of, is meant. The law has a standard for measuring the intent of parties, and de- clares an illegal act, prejudicial to the rights of others, a fraud upon such rights, although the parties deny all intention of committing a fraud. 11 *Wend.* 224.

The principle upon which assignments of this kind, have been declared void is, that one partner has no authority to make a general assignment of the partnership effects, in fraud of the rights of his co-partner, to participate in the distribution of the partnership effects among the creditors. *Havens* vs. *Hussey,* 5 *Paige,* 31.

The implied authority of one co-partner is, that he may per- form any act within the scope of the co-partnership, which may be necessary to carry on the concern. Under this implied power, it has been held, that one partner may assign such por- tion of the partnership effects as may be necessary in payment of a debt, or to secure a creditor. But this is a general assign- ment, and if sustained at all, breaks up and puts an end to the co-partnership. If sustained, and the assignee is authorized to go on and close up the affairs of the concern, does it not ne- cessarily lead to all the consequences intended to be guarded against in the decision in the case of *Havens* vs. *Hussey?* One partner, by selecting a creditor, large or small, as the assignee, may effectually put the other partner out of the possession of his property, and end the business without the knowledge or assent of his co-partner. He is deprived of the right to which the decision in 5 *Paige,* 31, declares he is entitled.

The preferred creditor has been selected without his know-

ledge or consent, and a party who has been illegally placed in possession of the entire partnership effects, if the views urged by the counsel of the defendants are sustained, is entitled to the custody, and has the right to settle and wind up the concern. One good trust could always be inserted, and thus the partner would do indirectly what could not directly be done. Whatever view may be taken of the question, as to whether this assignment may be void in part only, or in *toto*, it seems to me inevitable, that, as the case now stands, a receiver should be appointed. But, as it is urged that a decision be now entered upon the validity of the assignment, and it seems but just and proper that it should be done, I shall do so according to the best reflection I have been able to give it.

A distinction seems to have been taken, in some of the cases, between instruments void by statute, and at common law.

In the case in Peters, cited in support of this assignment, it is said, quoting the opinion of Chief Justice Gibbs, that if an act be prohibited, the construction to be put upon a deed conveying property illegally, is, that the clause which so conveys it, is void, equally whether it be by statute or at common law. This is undoubtedly the true rule, and there is no reason for any distinction, except where the statute goes further, and declares the whole instrument void. The cases where instruments have been declared good in part, and bad as to the residue, seem to have been bonds which were variant from the statute, or deeds which purport to convey lands, some portion of which the party could not lawfully convey. In the one case, the bond may be valid in part only. The rights of no one are interfered with. Effect is given to the bond so far as it is in conformity with the statute. If it contains other conditions or requirements, they are declared void.

So with deeds. The grantor may have title to nine hundred out of a thousand acres of land, and may have no right to convey the residue. Still, it would be unjust to deprive the grantee of that to which the grantor had a title, and by giving it effect, *protanto*, the rights of no one are violated.

Is it so here? The partner has been deprived of all control

over, or voice in the disposition of the effects of the co-part-
nership, without his consent.

Shall effect be given to this proceeding? Can the court say, where the whole effects are mingled together, that it shall take effect as to certain portions of the property, and be void as to the residue? One good trust is inserted, but that cannot make an illegal instrument a valid one. The legal and illegal are so mixed and commingled, that if assignments of this character are sustained to the extent asked, they may as well be sustained in toto.

A grantee who voluntarily becomes a party to a deed which is fraudulent in part, forfeits his right to claim a benefit from another part that would otherwise have been good. 14 *Johnson's Reports*, 465. Here the assignee takes a general assignment from a party not authorized to make such an instrument, and I think it cannot be sustained.

The order is, that the assignment be set aside and declared void, and that it be referred to a master to appoint a receiver; and that said Nehemiah Ingersoll deliver over to, and account with, said receiver, for whatever shall have come to his hands by virtue of said assignment.