ELMENDORF and BEEKMAN *against* G. LANSING, Jun. and
others.

Where an executor, or other trustee, mismanages the estate confided
to his care, *or* puts the assets in jeopardy, by his actual or impend-
ing insolvency, this Court will restrain him from all further inter-
meddling with the estate, and compel him to restore the funds in his
hands.

An executor, on a bill filed against him by his co-executors, was re-
strained from all further interference in the management of the
estate, and decreed to restore to the plaintiffs a bond and note of
the estate, in his possession, but not to account for money he had
received on the bond, or to pay the costs of the suit.

*August 22d.*  THE bill stated, that *Jeremiah Lansing*, of *Albany*, who
died in *February*, 1810, by his last will, appointed the plain-
tiffs, and the defendant, *G. Lansing*, jun. his executors.  *G.
L.*, who had united with the plaintiffs in the execution of
the will, removed to *Herkimer* in 1811, and the whole care
of the estate, from that time, devolved on the plaintiffs.  In
*September*, 1817, *G. L.* returned to *Albany*, and demanded
of *B.*, one of the plaintiffs, access to the papers of the testa-
tor, which was, at first, refused, but afterwards granted;
and without the knowledge or consent of the plaintiffs, *G.
L.*, took from the assets of the testator, a bond of *J. T.*, for
1,215 dollars, and a note of *G. P.*, for 2,218 dollars and
47 cents; and assigned them to *J. V. N. Yates*, from whom
he received a bond and mortgage in his own name.  On
representation, and at the instance of the plaintiffs, this as-
signment, and the securities, were cancelled, and the bond
and note returned to *G. L.* who had demanded, and re-
ceived of the obligor 200 dollars, and refused to re-
turn to the plaintiffs the bond and note, or deposit them
with the papers of the testator, or account for the mo-

ney so received by him. That in *November*, 1818, *G. L.* again sold the note to one *S.*, and received a greater part of the amount to his own use; and had put the bond in the hands of an attorney, with directions to collect it for him. That *G. L.* had drawn a check on the *Bank of Albany*, for 450 dollars, as one of the executors, in favour of one *W. G.*, which had been refused payment, and *W. G.* had brought an action thereon against the bank. The bill charged that *G.* was utterly insolvent, and was indebted to the estate of the testator. That the interest of the estate did not require that the bond and note should be collected. The bill *prayed*, that the defendants *G. L.* and *S.*, may be decreed to deliver the bond and note to the plaintiffs, or bring them into Court, and for an injunction, and for general relief.

The *answer* of *G. L.*, charged the plaintiffs with remissness in settling the estate, and as disposed to exclude him from an active participation in the management of it. He admitted, that he took the bond and note belonging to the testator's estate, and insisted that he had a right to do so; that his object was to guard the interest of the estate, and not fraudulent, or with a view to appropriate the money to his own use. He admitted the assignment to *Yates*, which was afterwards cancelled; that he, afterwards, sold the note to *S.*, but that the sale had since been revoked, and the note returned. That he drew the check on the bank, which had been refused payment, because not signed by a majority of the executors, and a suit brought in the name of *D.*, who was his agent. He denied the charge of insolvency. He admitted, that he received the 200 dollars on the bond, but without intending to apply it to his own use; that he was indebted to the estate for money received as executor, of which he had already rendered an account, except for the 200 dollars; but that, on a settlement of all just claims between him and the estate, there would be a balance in his

1820.

ELMENDORF
v.
LANSING.

favour. That he is a legatee, and entitled to a just allow-ance, as an executor, &c.

The other defendants put in their answers; and proof was taken as to the insolvency of *G. L.*, and it appeared, that he had little or no property.

*Van Buren* and *Butler*, for the plaintiffs. They cited 2 *Cases in Ch.* 130. *Ambler*, 309. 2 *Vesey*, jun. 94. 4 *Vesey*, 592. 5 *Vesey*, 722. 2 *Atk.* 213. 2 *Sch.* & *Lef.* 26. 1 *Bro.* 105. 279. 13 *Vesey*, 266. 4 *Bro.* 277. 2 *Vesey*, 95. *Rep. in Ch.* 110. *Carth.* 457. *Cases in Ch.* 75. 2 *Vern.* 249.

*J. V. N. Yates*, contra.

THE CHANCELLOR. The defendant *Lansing's* answer, is a sufficient admission of abuse of trust. After residing se-veral years out of the city and county of *Albany*, he re-turned there in 1817, and took from the custody of the plaintiffs, without their knowledge or consent, a bond and note, being part of the testator's assets, and which amount-ed, on the face of them, to 3,400 dollars, and upwards. He applied to the obligor of the bond, and received 200 dollars, in part payment of it, and then sold the bond and note to a third person, and took a bond and mortgage for the amount to himself. The bond was then put in suit by the purchaser; but, upon the remonstrance of the plaintiffs, the sale was rescinded, and the bond and note restored to the defendant. He then sold the note to another person, and that sale was-afterward rescinded. The bond was then order-ed to be put in suit, and he drew a check on the *Bank of Albany*, where the executors had made deposits of the trust moneys, for 450 dollars; and the check was delivered to the other defendant, who resided in his family, and is charged to be insolvent.

These acts show an unequivocal disposition to convert the assets of the testator to his own use, and the proof is full and satisfactory to the point, that this defendant is worth little or no property. It becomes, therefore, just and necessary, that the defendant *L.*, should be restrained from further intermeddling with the estate, as a co-executor; and that he should restore the bond and note which he so improperly took, and has so injuriously converted; and that the suit against the bank, upon the check, should be perpetually enjoined, and the check cancelled.

It is a settled principle of this Court, that an executor, or other trustee, who mismanages, or puts the assets in jeopardy, by his insolvency, either existing or impending, should be prevented from further interfering with the estate, and that the funds should be withdrawn from his hands. The authorities to this point are sufficiently numerous. (*Rous* v. *Noble,* 2 *Vern.* 249. *Batten* v. *Earnley,* 2 *P. Wms.* 163. and *vide* 3 *P. Wms.* 334. S. P. *Carth.* 458. *Taylor* v. *Allen,* 2 *Atk.* 213. *Utterson* v. *Mair,* 4 *Bro.* 277. 2 *Ves.* jun. 95. *Lake* v. *De Lambert,* 4 *Vesey,* 592. *Middleton* v. *Dodswell,* 13 *Vesey,* 266.) I shall, accordingly, restrain the defendant *L.* from acting, or intermeddling any further with the assets, or in the administration thereof, as a co-executor; and shall direct him to restore the bond and note to the plaintiffs, and cause the check on the bank to be cancelled; and that the suit thereon be perpetually enjoined.

As to the 200 dollars, which *L.* has collected, that may be left to be accounted for when he is called to an account, at the instance of creditors or legatees, for his previous share of the administration of the estate, in which, perhaps, he may have a claim for just allowances. This suit is founded on principles of preventive policy, and to stay future waste and conversion of the assets. I am not disposed to go further upon this present application by the co-executors. I shall not charge the defendants with the plaintiffs' costs of

this suit, but I shall allow the plaintiffs to charge their reasonable costs and charges of this suit, upon the assets in their hands.

Decree accordingly.