MANDEVILLE, executor, &c. *appellant, vs.* MANDEVILLE, *respondent.*

An executor can be required to give security only when the surrogate is satisfied that his circumstances are such as to render it doubtful whether the property of the testator will be safe in his hands ; to be disposed of as directed by the will. The mere fact that he is not possessed of property of his own, equal in value to that of the estate which the testator has appointed him to administer, is not a sufficient ground for requiring him to give security.

Where there is no ground for supposing that the trust funds, in the hands of an executor, are in danger from his improvidence, or his want of pecuniary responsibility, he cannot be required to give security.

THIS was an appeal from a decision of the surrogate of Cayuga county, requiring the appellant, as the executor of his father's estate, to give security for the performance of his trust. The testator made his will, in 1836, and thereby

authorized and directed his executors, as soon as practicable after his decease, to sell his real estate ; but not to allow a credit on such sale for more than five years, and to rent the property until a sale could be effected. He then directed the proceeds of such sale and of his personal estate, after paying debts, &c. to be distributed among his four sons and four daughters, in the proportions of two shares to each son and one share to each daughter ; and that the avails of the estate should be distributed as often as the executor should have fifty dollars or more on hand. The testator named the appellant, who was one of the sons, and two other persons, as executors. In August, 1839, letters testamentary were granted to the appellant as the sole executor of the will—the two other executors named therein having renounced the trust. The testator's personal estate, including the amount due for advances to three of his sons and one of his daughters, and which by the terms of the will were to be deducted from their several shares, or applied towards the same, was about $5800, after payment of his debts ; among which debts was a note of about $1500 due to the son who was appointed executor. And the estimated value of the real estate which the executors were directed to sell was a little less than $6000.

In December, 1839, the respondent, one of the sons of the testator, presented a petition to the surrogate, stating that the executor was a man of small property, and that his circumstances were such as to afford an inadequate security for his due administration of the estate ; and that the moneys to be received by him would be unsafe in his hands. Upon the hearing before the surrogate it appeared, by the proofs, that the executor was worth about $6500 ; including his distributive share of his father's estate and the note due to him from such estate. The testimony was also such as to satisfy the surrogate that the executor was perfectly honest and upright. And he was not engaged in any hazardous business or speculations ; nor were his circumstances precarious, in the popular sense of the term. The surrogate held, however, that the appellant's property did not afford such

security for the due administration of the estate as would have been taken had he applied for administration in a case of intestacy. He therefore decided and decreed that the circumstances of the appellant were so precarious as not to afford adequate security for the administration of the estate of the deceased ; that he should within five days give a bond with two sufficient sureties, in the penalty of $15,000 ; and that the costs of the proceedings upon the petition should be paid out of the estate. From this decision and decree the executor appealed to the chancellor.

*H. F. Mather*, for the appellant.

*N. Beardsley*, for the respondent.

The Chancellor. I think the surrogate erred in this case, in supposing that the circumstances of the appellant were so precarious as not to afford adequate security for his due administration of the estate of the decedent ; according to the true construction of the provision of the revised statutes under which this proceeding was instituted. (2 *R. S.* 72, § 18.) It certainly could not have been the intention of the legislature, to prohibit the granting of letters testamentary to any executors except such as are possessed of property, of their own, to the full value of the estate which the testator has authorized and appointed them to administer ; or that an executor should be superseded in his trust, or required to find security, whenever his property was reduced below that of the decedent. Such a construction of the statute would render it almost impossible for a man of a large property to select an executor who would be both able and willing to assume the execution of the trust. The obvious meaning of the statute is, that an executor may be required to give security, whenever the surrogate is satisfied that his circumstances are such as to render it doubtful whether the property will be safe in his hands ; to be disposed of, or administered, as directed by the will.

Here the testimony shows that the executor is a prudent

1840.

Mandeville
v.
Mandeville.

and discreet man in the management of his own affairs; that he has a farm of 173 acres, with only an incumbrance of $200 on it; which farm, and his other visible property, including his own share of his father's estate, are nearly equal to the whole amount of the trust fund which can by any possibility come into his hands to be administered. And he is not engaged in any business which will be likely to endanger the trust fund. He is worth at least $6000, after paying the very small amount of debts which he owes; that is, more than twice the amount of the personal estate which will remain for distribution among his brothers and sisters, after offsetting their debts against their respective shares. Also, by the express directions of the will, the funds are not to remain in his hands for any length of time after they shall have been received by him; as he is required to distribute the same as often as he receives to the amount of $50. And as the real estate will unquestionably be sold upon credit, for a part of the purchase money at least, there is no reason to suppose the executor will ever have in his hands at one time funds of the estate, undistributed, to the amount of $2000. Taking the whole testimony together, I do not think there is the least ground for supposing that the trust fund is in any danger; either from the improvidence of the executor or from any want of pecuniary responsibility. The case of *Wood* v. *Wood*, (4 *Paige's Rep.* 299,) was entirely different in this respect. There, the executor had no visible property except a contingent interest in the estate itself; and the trust, as to the greater portion of the fund, was to continue for a very great length of time. He was also in that case about to remove, with the fund, out of the jurisdiction of the state. But none of those grounds for the interference of the court exist in the present case. I think the surrogate, therefore, instead of requiring the executor to give security, should have dismissed the petition.

For these reasons, the order or decree of the surrogate which is appealed from must be reversed, with costs to be paid by the respondent; and the petition to the surrogate

for security must be dismissed.   The executor must also be permitted to retain his costs and expenses of the proceedings before the surrogate, out of the estate in his hands ; as a necessary disbursement by him in the discharge of his trust.