The Chancellor.
It is every day’s practice to hear an answer read as an affidavit, against a motion for an injunction. I cannot doubt that the court may hear the defendant by affidavit. The complainant gives notice of a motion for an injunction on his bill, and says the case is pressing, and that he cannot wait for an answer. The defendant,-then, should be heard in a shorter way than by anstver. Let the affidavits be read.
The first affidavit of Roswell L. Colt states, that he has been governor of the society since 1824. That he has searched the books and -papers of .the society, and finds no stock standing in ,the complainant’s name. That on the 31st May, 1827, ten shares stood in the name of Peter Y. ¡B. Livingston; and that on that day they were transferred by Peter Kean, trustee and attorney of Peter Y. B. Livingston, one share to Philip Ricketts, and nine shares to said Peter Kean ; that these nine shares still stand in the name of Peter Kean; that he died intestate, in 1828, and that administration of his personal estate was committed to Sarah S. Kean, his widow, who afterwards married Looe Baker, who, and the said Sarah, now live in the city of New-York. That no transfer of said shares, or any of them, has been made by them or either of them, on the books or papers of the society; and that no notice of any such transfer has ever been given to the society, to the deponent’s knowledge or belief. That neither the said Peter Kean in his life time, nor the said administratrix, nor the said Looe Baker, nor the complainant; ever called for any dividends on the said shares, or requested any examination of the affairs of the society, or made any complaint of the acts, proceedings or management of the society; nor has the complainant remonstrated to the said socie *375 ty against any of its acts or doings. That the deponent has heard, for many years, that there are disputes about the right to the said shares, and that divers persons have claimed an interest therein; and that he has always believed and now believes, that the only reason why the dividends on the said shares have not been called for, was the dispute about the right thereto. That no notice lias ever boon given to the society that tile rights to'the same have been adjusted. That the principal business of Paterson'depends on the certain and regular supply of water to the mills ; and that this water is under the entire charge of the society and its agents; and that the society is now engaged in making important alterations, and employing a good many hands. That there are important lawsuits now pending between the society and its tenants or grantees: and one, vital to the interests of the society, with the Morris Gana! and Banking Company; and that he believes that the complainant’s bill has been contrived by persons employed as counsel for, or interested in the stock of said Morris Canal ant! Banking Company, to prevent the prosecution of said suit with effect. That the whole stock of the society is' 2269 shares } and that he owns-, either in his own name or in trust for him, 2019? shares, and that his son Morgan G. Colt owns 100 shares, and his son Thomas O. Colt 100 shares. That Peter V. B. Livingston died in 1792, leaving a large number of children ; and that if he, in his life time, had given to Peter Kean a power of attorney, it must have ceased to operate at his death: and that the deponent has no recollection of ever having seen any such power of attorney. „
The deposition of Joseph Smith states, that he is, and has been for some years, agent of the society; and that he has charge of the books. That there is no stock standing in the name of John Kean on the books of the society. That 1G' shares, and no more, stood in the name of P. V. B. Livingston. That on the 31st May, 1827, P. Kean, as trustee and attorney for P. V. B. Livingston, transferred one share to P. Ricketts,- and nine shares to P. Kean; and that these nine shares now stand on the books in the name of P. Kean. That the whole number of shares of the society is 2269 ; standing on the books-as follows:
*376 Iff the name of R. L. Colt, - 2001? “ « R. L. Colt, jun. - 10 “ “ M. G. Colt, - 100' T.- O. Colt,- - 100 2211?
Leaving’ 57? shares, not' owned by Roswell L. Colt and his sons.That there is, this day, standing to the credit of Roswell L; Colt, on the books of the society, $2257 35; and that the said-Roswell L. Colt is not’ indebted to the society, either on noté,bond or otherwise, on this 11th December, 1845.
The second affidavit- of Roswell L. Colt, made Décember 11th,-1845, states, among other things not necessary to be noticed, that he was nota director till 1814. That when he became a director, the affairs of the society were'in a bad state. That at-a meeting of the stockholders in June, 1814, the stockholders, on his motion, took into consideration the propriety of dissolving the society, and unanimously resolved that it was inexpedient, and that measures should be adopted to increase the funds of the society, so that they -may renew their active manufacturing operations; and that the governor or deputy governor be authorized to sell such mill seats, house lots,- buildings, &c. as &c.
That on the 15th- November, 1793, one Abijah Hammond was elected treasurer, but declined to give security ; and therefore, on the l-5th April, 1794, it was resolved, that his appointment be vacated, and that he be desired to pay the moneys in his hands to the governor; and that the governor receive the same, or any other money due the society, and be authorized to sell and transfer such- part of the stock of the United States hank, standing in the name of the society, as will be sufficient to pay the drafts of Mr. Colt,- the superintendent, (the defendant, Roswell L. Colt,) or other debts which he may be authorized to discharge; and that he be vested with all the powers of cashier and treasurer. That no cashier or treasurer wa!s ever after appointed, till lately; but the funds have been in the hands of the agent of the society,- under the superintendence and control of the governor for the time being. That no loss has happened by reason thereof, and no complaint has been made by any stockholder. That lately, on the 1st December, 1845, the *377 board appointed a treasurer, and have taken from him sufficient security, approved by the board, in $20,090.
That the society have disposed of the lottery right; and that all the moneys received for it, or on account thereof, have been paid to the society, and passed to the proper account on the books of the society. That the deponent has expended large sums in erecting mills, &c., whereby the prospects of ih« society have been very much improved. That no stockholder except the deponent has advanced a cent to aid the society, or improve the property, but that the deponent has had to advance all his energies and a very large amount of money for this purpose.
That in February, 1793, the directors appointed a superintendent, with a salary of $2500 per annum, and furnished him a suitable house, and authorized him to employ a clerk. That the deponent was appointed agent for the society in 1814. That the society have erected a large house on their ground in Paterson ; which house and grounds arc now in his occupancy. That the plants, shrubbery, &c. are a subject of charge by this deponent to his own account, and not to the debit of the society; and is not deducted from the profits of the society. That the furniture and expenses of living are paid for by him out of his own funds; but he says he has never received any compensation for his services as governor, superintendent, or agent, until the board, on the 8th July, 1839, in consideration of his services for near thirty years, resolved, that a lease be executed for the joint lives of Mr. and Mrs. 11. L. Colt, of the mansion house and grounds within the board fence, at a nominal rent of $100 a year; which lease has since been executed.
That he is now willing to purchase the said house and improvements at cost, and the lands attached thereto at a fair price, if the society will make to him a fair allowance for his services, in lieu of said lease. That the society had out lands which had been nearly unproductive; and have erected buildings thereon, stocked the farm and improved it, and carried it on; which he is advised they had a right to do; but if there has been any loss either in the said mansion house or the said farm, he and his sons suffer about 98 per cent, thereof; and that the profit or loss of the said farm was to go to the society, and not to him individually.
*378 That he has never invested one dollar of the society’s money in the stock of the bank of the United States; and he does not recollect or believe that he has received or used any money from the society, except what he has been charged with by the society. That the society bought of him, about 1838, mills, &c. which he held, and most of which had been built by him, out of his own moneys, or moneys- he had borrowed on his own account from Robert Oliver and others, to aid the society, amounting to $155,770 68; and also other property of great value to the society, for $60,000; and from other causes became indebted to him in a large sum; and, to secure him, the society directed bonds and mortgages to be given to him; but that such bonds and mortgages were afterwards cancelled; and that on March 16th, 1840, the society were indebted to him in $305,198 31.
That at a meeting of the board of directors on that day, entries were made in the book of minutes of the society, as follows : “An offer having been- made by R. L. Colt to purc'hase certain &c., for $200,000; resolved, that the society do agree to sell to said Colt the said house lots, rents, &c. and reversion's in fee, for $200,000, as of the 1st February last; and that, as to the said water rights where no mill seats are conveyed, the said Colt and his assigns shall have the privilege of using said water on any mill seat on the tier of mill seats for which they are now leased; and that said Colt be charged, on the books of the society, with said $200,0.00, as of the 1st February last.”
That at this meeting, five of the directors were present. That feeing indebted, at that time, to the executors of Robert Oliver, he assigned the said leases, water rights, reversions and- mills to them, in payment of his debt. That this was- done openly and fairly, under the directions of the chancellor. That he has not repurchased any of the property so assigned by him to the said executors.
That the board did direct five bonds to be given to him, in all $80,000, to be secured by a mortgage; but they were after-wards given up and cancelled. But the society is indebted to him, at this time, in- $22,057 35 ; and that it will so appear by the books of the society. That of the stock belonging to him, 2001? shares stand in his name; and that they are not- in *379 cumbered in any way. That he is not now embarrassed in his circumstances. That since his former affidavit, he has transferred ten shares to his son, R. L. Colt, jun.
The motion for injunction and receiver was argued on the bill and affidavits.
B. Williamson and W. Halsted, in support of motion. They cited 1 Hill’s Ch. R. 390; 2 John. Ch. R. 30, 256; 1 Paige, 396; 3 Ibid, 117; 8 Wheat. 421; 1 McCord, 389; 3 Yerger, 201; 8 Pet. 281, 286; 2 Story’s Eq. sec. 1252; 4 Russell, 272, 562; 3 Paige, 222, 233; 1 John. Ch. R. 26; 4 Price’s Exch. R. 346; 6 Cranch, 51; 1 Green’s Ch. R. 190, 191; 1 Edw. 84, 513; 1 Simons, 27; 19 John. R. 477; 8 Cow. 387; 4 John. Ch. R. 104; Story’s Eq. Pl. 190, 191; 1 Myln and Keen, 377; Dess. 154; 3 Atk. 564; 2 Story’s Eq. sec. 827, 831, 835, 836; 2 Sim. and Stuart, 142; 8 Paige, 475; 13 Vesey, 105; 2 Bro. Ch. 157; 18 Vesey, 283; 16 Ibid, 59; 3 Meriv. 697; 1 Ball and Beatly, 75; 12 Vesey, 4.
P. D. Vroom and E. Vanarsdale, sen., contra. They cited Drury on Inj. 137, 192; 6 Eng. Cond. Ch. 498; 1 Myln and Keen, 61; Mitf. 155; 3 P. Wms. 33; Ang. and Ames on Corp. 318, 344, 345; 1 John. Ch. R. 305; 1 Vesey, 105, 131; 1 Bro. Ch. 303; 2 John. Ch. 238; 1 Eq. Ca. Ab. 73; 1 Vern. 31, 261; 1 Mad. R. 446; 1 Hopk. 599; Saxton, 192; Grant’s Prac. 332; 7 Vesey, 309; Saxton, 157; 1 Green’s Ch. 173; 8 John. Ch. 160; Ambler, 209; Saxton, 369; 4 John. Ch. 21; 6 Ibid, 19; 1 Coxe’s Ch. 103; 18 Vesey, 515; Saxton, 718; Cooper’s Eq. R. 30; 12 Eng. Cond. Ch. 16; 16 Vesey, 69, 70; 2 Edw. 286; 2 Paige, 450, 351; Ibid, 438, 449; 6 John. Ch. 160; 2 Kent’s Com. 304, 305, note; 2 John. Ch. 389; 19 John. R. 473, 474; 1 Hopk. 360, 598; 2 John. Ch. 371; Saxton, 186; Ang. and Ames on Corp. 510, 664; 2 Sch. and Lef. 607; 2 Mad. Ch. 188; 2 Bro. Ch. 158; 13 Vesey, 108, 266.
'The Chautcellok.
The motions are denied. To enter fully into an examination of the case at this time would, I think, bo umvise. To authorize an injunction and the appointment of a receiver, there must be a well grounded apprehension of *380 Injury about to be done. I see no sufficient cause of present alarm to demand the interposition of the court. The misconduct alleged in the bill, occurred, if at all, several years since; .too long since to be the ground of apprehension of impending .mischief No act is stated as now threatened, or misapplication of funds as about to be made.
Motions - denied.