GERTRUDE B. BOWLING, by next friend, etc., *vs.* HORACE G. SCALES and others.

April Term, 1874.

NEXT FRIEND—NEGLECT OF DUTY.—Upon bill filed by an infant, by next friend, and injunction obtained to enjoin a testamentary trustee from making any disposition of the assets in his hands, or collecting any money belonging to the trust estate, it is the duty of the next friend to apply promptly for a receiver, and he will be liable for any loss to the trust estate occasioned by his neglect so to do ; and his failure is, moreover, ground for a motion to dissolve the injunction.

TESTAMENTARY GUARDIAN—REMOVAL.—Where a testator thinks fit to repose a trust without security, the court will not interfere until a breach of trust, or a tendency thereto.

RECEIVER IN CASE OF TESTAMENTARY TRUST.—Although poverty is no ground to deprive a man of a trust thrown upon him by a testator with full knowledge, yet the fact that the testamentary trustee is a man of limited means, and has, since the testator's death, embarked in a large and hazardous business, is sufficient to authorize the appointment of a receiver until the hearing of the case on its merits.

*J. O. Shackleford*, for complainant.

*T. H. Malone*, *N. S. Brown*, and *Ed. Baxter*, for defendant.

THE CHANCELLOR :—On the 19th of October, 1870, Charles Bosley departed this life, in Davidson county, leaving a large estate, real and personal.   By his will, after providing for the payment of his debts, he gave to his wife one-third part in value of his entire real estate, during the period of her natural life.   He also gave to her one-third part of his entire personal estate, in the event she survived him.   He gave to Powhatan Bowling a house and lot in Nashville, and to Charles Bosley Erwin $5,000, to be paid in current funds.

The will then proceeds thus : "I direct my executors to set apart the sum of twenty thousand dollars ($20,000), in gold, and to preserve it as a sacred fund, letting it remain as so much unproductive capital, not even lending it on interest, and on the day that my great-granddaughter, Gertrude Bosley Bowling, arrives at the age of twenty-one years, I wish my executors to pay over the said sum of money, in gold, to her, as a birthday present, for her sole and separate use, not to be liable for the debts or contracts of any husband she may ever have. This legacy is not to vest until said Gertrude reaches her majority.

"The rest and residue of my estate, real, personal, and mixed, including the reversion of the lands given to my wife, and also including the legacy of personalty bequeathed to her should she not survive me, I give and devise to my executors hereinafter named, who are also constituted testamentary and executory trustees, or to the survivor of them, or to either one who may accept the trust, his or their heirs and assigns, in trust, nevertheless, for the following uses and purposes, that is to say : The estate is to be kept together and improved to the best advantage, as near as possible in the manner heretofore pursued by myself, the interest, rents, issues, and profits of which are to be used, applied, and appropriated for the education, benefit, support, and maintenance of my great-granddaughter, Gertrude Bosley Bowling, now an infant, for and during the period of her natural life, for her sole and separate use, her receipt to be a good voucher to my executor for said interest, rents, issues, and profits, and the same not to be liable for the debts or contracts of any husband she may ever have ; and upon the death of the said Gertrude, leaving issue at the time of her death, said executors are required to transfer and convey the *corpus* of said estate, devised to them as aforesaid, unto any child or children of said Gertrude who may be living at the time of her death, share and share alike, in fee simple, forever ; and if any child may have died during Gertrude's life, leaving children or issue, said children or issue to rep-

resent and take the share of the parent. But should said Gertrude die without issue living at the time of her death, then the *corpus* of said estate, including any interest, rents, issues, and profits not used or appropriated for the benefit of said Gertrude, and also including said legacy of twenty thousand dollars ($20,000), in gold, should the same not have vested, is to be disposed of as follows—that is to say: I give," etc., devising the property over.

The testator, by his will, appointed G. M. D. Cantrill and the defendant Horace Scales "executors and trustees," not requiring security of either of them. By a codicil he revoked the appointment of Cantrill. By another codicil he appointed John M. Lea "one of my executors," not requiring security. Lea declined to act, and the defendant Scales alone qualified.

The defendant, as executor, returned an inventory of the personal assets of the estate, as required by law, to the November term, 1870, of the county court, and, on the 5th of May, 1871, an account of sales of personalty.

On the 13th of December, 1872, the defendant Scales, as executor, made a settlement of his administration with the county court clerk, in which he is properly charged only with the proceeds of personalty which came, or ought to have come, to his hands, and allowed all proper disbursements, including $5,900 in compensation to him for his services. The widow of the testator was entitled to one-third of the personal estate, and Charles Bosley Erwin to a legacy of $5,000. The residue of the property, and the realty not otherwise disposed of by the will, vested, upon the close of the administration, in the defendant Scales, as testamentary trustee, for the purposes already set out.

The bill in this case was filed on the 21st of July, 1873, by Gertrude Bosley Bowling, the great-granddaughter and infant beneficiary of the testator, by W. K. Bowling, her grandfather and next friend, for a construction of the will, to require the executor to pass his accounts in this court, and to compel him to give security for the execution of the trust,

5

or to remove him. The defendant Scales has answered the bill, setting out his accounts in detail, and submitting to such further accounting as the court may order. The case is before us now upon the motion of the complainant, supported and resisted by affidavit, to appoint a receiver pending the litigation, and a counter-motion of the defendant to dissolve the injunction granted at the filing of the bill. These motions were made about the middle of this month, January, 1874.

The question presented for the consideration of the court is one of the most delicate and difficult which comes before a Chancellor. On the one hand we have a testamentary trustee of the testator's own choosing, who had long acted as his agent, and with whose character and business capacity he must have been familiar. On the other hand we have an infant of tender years, appearing by her grandfather and next friend, and charging that the defendant has committed breaches of trust, and that the fund is in danger. It is the duty of the court, under these circumstances, to examine the facts carefully, and weigh the conflicting interests as evenly as possible. The result, in any event, will necessarily be unsatisfactory to the losing party and friends; for the one side will be self-persuaded that the peril to the fund is extreme, while the other will be equally convinced that character is involved; while, in reality, the hazard to the fund may be very slight on the one hand, and character not at all implicated on the other.

The principles of law which govern in such cases are clear enough, the difficulty lying only in the application to the facts of the particular case. "Generally speaking," said Lord Talbot, over a century ago, "where the testator thinks fit to repose a trust, in such case, until some breach of that trust be shown, or at least a tendency thereto, the court will continue to intrust the same hand without calling for any other security than what the testator has required." *Slanning* v. *Style*, 3 P. W. 336. But the court will not hesitate to appoint a receiver where there has been a breach

of trust, or the prospective danger is great. *Taylor* v. *Allen*, 2 Atk. 213; *Batten* v. *Earnley*, 2 P. W. 163; *Elmendorf* v. *Lansing*, 4 Johns. Ch. 562. A court of chancery will never deprive a man of a trust, thrown upon him by a testator with full knowledge, merely because he is poor. *Anon.* 12 Ves. 4; *Howard* v. *Papera*, 1 Madd. 142; *Mandeville* v. *Mandeville*, 8 Paige, 475. Poverty is no disgrace, and integrity and honesty are not bestowed upon the rich alone, but, fortunately for humanity, are found in the humblest cottages. At the same time, the want of means will be a strong circumstance if any other positive ground of action exist. *Taylor* v. *Allen*, 2 Atk. 213.

Before proceeding to a consideration of the facts it is proper to notice a point in which both parties have been gravely at fault. This bill was filed on the 21st of July, 1873, and an injunction obtained " enjoining the defendant Scales from making any disposition of the assets in his hands, or collecting any money belonging to said estate." This injunction has been suffered to stand for six months, the whole trust business of this large estate being kept in abeyance for that long period of time. It was the duty of the next friend of the complainant to have applied for a receiver promptly, so that the business of the trust might go on; and if he failed to do so it would have been a good ground on the part of the defendant for a motion to dissolve. *Osborn* v. *Heyer*, 2 Paige, 342. Both parties have been clearly, and perhaps equally, in fault in this matter, so far as the next friend and trustee are concerned. But if any loss has been sustained by the trust estate by the neglect, it is certain that the court will see that the infant does not suffer thereby.

The rights of the parties must turn upon the pleadings and regular proof. Upon careful examination of the affidavits on both sides, I have not found that they aided me in the least. It was satisfactory to come to this conclusion, some of the affidavits having been prepared and submitted after the cause had been argued and taken under advisement. The affidavits as to the character of the defendant can add

nothing to the presumption of law in that regard, and the endorsement of the testator. On the other hand, affidavits of what the testator may have said, or of the motives of the affiants, can of course have no weight.

The will directs, as we have seen, after the payment of debts, cost of administration, and legacies, that the executor shall set apart $20,000, in gold, "and preserve it as a sacred fund, letting it remain as so much unproductive capital, not even lending it on interest," to give to the complainant, as a birthday present, when she arrives at twenty-one years of age, and not to vest in her until then. These provisions are plain and unambiguous. It was the positive duty of the executor, as soon as the administration was closed and the legacies paid, to set apart this fund without delay. No discretion is allowed him by the will, and it was a clear breach of trust not to have proceeded to carry out the directions of the will at once. Only a court of chancery can, upon good cause shown, authorize a departure from such positive testamentary directions.

Although I am compelled to hold that the departure from the directions of the will was a breach of trust, yet there are circumstances brought out in the record which go far to excuse the executor. The course actually taken was only determined upon after consultation with the grandfather, now next friend of the infant, who not only advised the loaning of the money, but borrowed $5,000 of it, on ten years' time, at 10 per cent. interest, securing the loan by mortgage upon realty. It is obvious, therefore, that the nearest relations and friends of the complainant thought that the provision of the will was improvident, and both sanctioned and advised its violation in letter. To treat such a breach of trust as a criminal dereliction of duty would be manifestly unjust. It was an error of judgment, which the court always treats leniently, especially if no actual loss accrues.

The will vests the *residuum* of the testator's estate in the executor who qualifies, in trust, "to be kept together and improved to the best advantage, as near as possible in the

manner heretofore pursued by myself, the interest, rents, issues, and profits of which are to be used, applied, and appropriated for the education, benefit, support, and maintenance of my great-granddaughter, Gertrude Bosley Bowling, now an infant, for and during the period of her natural life," etc. These are plain directions as to the management of the property and disposition of the income. In order to accomplish the objects had in view, it was the duty of the executor to keep regular accounts of the profits of the estate each year, and to show what disposition has been made of them. It was further his duty to invest the moneys of the estate and rent the lands so as to bring in a regular annual income for the purposes of the trust, and to collect such rents and interest as promptly as could be done. In this respect the account furnished is not entirely satisfactory, though this may be owing to the fact that two years were occupied in winding up the administration, and another year had not elapsed before this bill was filed. The administration account does not separate the interest which accrued upon the notes after the death of the testator from the interest which accrued in his life-time. Upon a rough estimate, I have endeavored, from the *data* furnished by the settlement, to approximate the amount. I find the interest which accrued after the testator's death to the settlement to be very nearly............ $12,000.00

Of which the widow took

    one-third............ 4,000.00
                     ———— $8,000.00

Of this the executor says he has not

    yet collected.................... 1,469.00

Leaving interest collected.......... 6,531.00
Since collected.................... 1,480.21
Rents collected.................... 5,421.16
                     ———— $13,432.37
And he has spent..................     14,249.68

    Excess of expenditure...........     $817.31

In round numbers, he has spent all or a little more than collected.

These expenditures were as follows:

| | | |
|---|---:|---:|
| For complainant direct............... | $2,054.31 | |
| Paid her father for attention to her.... | 1,948.00 | |
| | | $4,002.31 |
| Taxes............................ | | 3,349.73 |
| Repairs and improvements.......... | | 6,897.64 |
| | | $14,249.68 |

Not the best of showing, it must be admitted, since the repairs of the realty are manifestly in excess of the rents, and yet not so glaringly bad that I can pronounce positively that there has been a breach of trust. The repairs of damages occasioned by a storm were extraordinary, and the improvements on the town house may have been absolutely necessary to enable it to be rented. The stone fencing is not shown to have been necessary or judicious, but the excess, if any, is too small to justify the removal of a trustee.

This brings us to the two most serious charges, which require our gravest consideration. The executor admits in his answer that he is properly chargeable, as trustee, with ................................... $57,698.98

| | | |
|---|---:|---:|
| For which he has notes........... | $50,241.86 | |
| And dividends on city bonds....... | 2,000.00 | |
| | | 52,241.86 |
| Leaving in his hands............. | | $5,457.12 |
| Which he says is in cash.......... | $4,961.31 | |
| And in a claim on Mrs. B.'s estate.. | 496.15 | |
| | | $5,457.46 |

Now, if the trustee had on hand, at the filing of the bill, so large a sum as $4,961.31 waiting an investment, it was a serious error not to have asked for a dissolution of the injunction so far as to enable him to invest it, or for leave to pay it into court. He ought, moreover, to have shown, upon the hearing of this motion, that the money was in his hands, by bringing it into court, or proving that it was on deposit

at some safe place. The complainant has taken the deposition of the cashier of the Third National Bank, at Nashville, where the defendant has kept his accounts as executor, and has proved by him that the defendant had on deposit, at the filing of the bill, only $355.92. The omission of the defendant to show the actual possession of the money as claimed by him is a grave one, and fatal unless excused and rectified.

The other serious charge is that the defendant is now engaged in a costly and hazardous business, being a man of little or no means, in which he has embarked since the death of the testator. The defendant admits that he is a man of small means, estimating himself as worth, however, $15,000. He also admits that he is engaged with a partner in distilling whisky. "The business," he says, "is conducted according to all the requirements of the acts of congress, and in such cases respondent thinks it not extra hazardous; at all events, not further than arises from a greater liability to fire. The business, he adds, does not amount to hundreds of thousands of dollars per annum (as charged in the bill); the gross sales will not exceed $60,000, or, at the very utmost, $70,000 per annum. In this connection respondent denies the charge that he has become a speculator, and says that his purchases with a view to sell again are confined to the purchase of hogs and cattle to be fattened on the refuse of the distillery, and submits whether this can, in any proper sense, be called 'speculating.'"

The question raised by the facts is whether the embarking in so large a business since the testator's death, the defendant being a man of moderate means himself, and not having shown that his partner was a man of wealth, is such a change of *status* as to require the court to modify the terms upon which the testator committed the trust to him, or to appoint a receiver pending the litigation.

The question is manifestly a difficult and delicate one, upon which, if I may judge from the arguments of counsel and my own researches, there is rather a dearth of authority.

I have not been able, in the limited time I have had for

investigation, to find any case directly bearing on the point, or strongly analogous, nor have the learned counsel found any. In the absence of authority it can scarcely be insisted that the facts suggested constitute, in law, a ground of removal. At the same time it must be clear to every practical mind that due attention to such a business might interfere with the discharge of the duties of a large and complicated trust. It is clear, also, from our knowledge of human nature, that the opportunity of using the trust funds in a profitable business would be a serious temptation to many men. There is no evidence in the record, however, to show that the trust business has been injuriously affected by the new partnership, or that the trustee is likely to be led astray by temptation. In other words, we are without facts, and must deal in conjecture.

Under these circumstances all I can say is that *at present* the facts would not justify the removal of the defendant as trustee, but they do show such a change in the *status* of the defendant, since he was appointed trustee, as tends to the prejudice of the trust. Further proof may entirely relieve the defendant from any apparent doubt, and, on the other hand, may clearly demonstrate an injury.

In view of this uncertainty, and the fact that the defendant has failed to show the actual possession of the $4,961.15 admitted to be due the trust, I have concluded to appoint the clerk and master of this court receiver of the trust property until the final hearing of this cause. At that time I will be in a condition to determine, positively, the one way or the other, the rights of the parties. I may then set aside the temporary receivership and restore the defendant to all the rights with which he has been clothed by the will. The order now made is based upon the right of an infant to be secure beyond doubt, and has been reached not without hesitation. It is not intended to imply any doubt of the character of the defendant for honesty and integrity. It is the exercise of judicial discretion, under conflicting assertions, to accomplish the object of all parties, the security of

the infant pending the litigation, in precisely the mode, and under almost the same circumstances, as existed in the leading case of *Taylor* v. *Allen*, 2 Atk. 213. The order is only temporary, and does not divest the legal title of the defendant under the will.